# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**STEPHEN L. HOLMES,**

        Plaintiff,

vs.                                                      No. CIV 99-822 JP/LCS

**KENNETH S. APFEL**, **Commissioner,**
**Social Security Administration,**

        Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing *(Doc. 9)*, filed January 24, 2000. The United States Magistrate Judge, having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, finds that the motion is well-taken and recommends that it be GRANTED.

**Proposed Findings**

1.     Plaintiff Stephen Holmes ("Holmes") filed an application for disability insurance benefits and for Supplemental Security Income ("SSI") on June 5, 1995.[1] *See* Admin. Record ("Record") at 118, 121. In that application, Plaintiff alleged that he suffered from a disabling condition due to severe back pain, and had not worked since July 30, 1992 as a result of the disability. *See id.* at 150. Plaintiff's application was denied at the initial and reconsideration sages. *See* Record at 108, 111, 127. Plaintiff requested a hearing on his application on

---

[1]Plaintiff originally filed an application for disability benefits on July 13, 1993, which was denied. Apparently, Plaintiff did not request reconsideration of that earlier denial, but instead filed a new application some two years later.

1

November 6, 1995.  *See* Record at 80.

      2.      The Commissioner's administrative law judge (ALJ) conducted a hearing on October 9, 1996. The ALJ likewise denied the application, finding that the Plaintiff was not disabled at step 5 of the sequential analysis set out in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993).  The ALJ found that Holmes could not return to his past relevant work as a plasterer, but had a residual functional capacity for at least unskilled light work.  *See* Record at 21.  The ALJ concluded that Holmes had the residual functional capacity to perform a significant number of other jobs in the national economy.  *See id.*

      3.      In the process of reaching step 5 of the analysis, the ALJ concluded that Holmes met the special earnings requirements of the Social Security Act through December 1997, has not engaged in post-onset substantial gainful activity since July 30, 1992 (step 1), has had a combination of impairments consisting of arthritis of the spine, disorder of the knee, skin cancer and bipolar disorder (step 2)[2], and cannot return to his past relevant work (step 4).  *See* Record at 13, 21.  The ALJ also concluded at step 3 that Holmes' impairments did not meet or equal in severity any of the disorders listed in the Listing of Impairments contained in Appendix 1 to 20 C.F.R. Part 404, Subpart P. ("Listing of Impairments").  *See id.* at 13.  Neither party challenges these findings.

      4.      At step 5 of the sequential evaluation, the ALJ determined that Holmes has the residual functional capacity for at least light work.  *See* Record at 21.  The ALJ acknowledged that Plaintiff's mental condition is a nonexertional impairment that must be considered in

---

[2]As Plaintiff correctly points out in his Memorandum in Support of Motion to Reverse *(Doc. 10)* at 2, the ALJ did not make a specific finding that these were "severe" impairments, but that finding is implied because the ALJ continued with the sequential evaluation.

conjunction with the exertional impairment.  *See id.*  The ALJ then went on to conclude that Holmes "has retained the ability, during any twelve month period under consideration, to sustain at least simple, routine, repetitive tasks with reasonable regularity and without undue supervision essential for the performance of a range of unskilled jobs existing in significant numbers in the regional and national economies."  *Id.*  The ALJ's opinion does not describe exactly how he reached this conclusion, aside from a previous paragraph that cited excerpts from Social Security Ruling 85-15, 20 CFR 404.1565, and 20 CFR 416.96566(d) for the proposition that unskilled jobs are more likely to provide accommodating work environments to individuals with mental disorders.  There is no evidence on the record that the ALJ relied on a vocational expert to reach the conclusion that Holmes could perform unskilled light work despite his mental condition.  Because the ALJ determined that there are numerous unskilled sedentary and light jobs in the national economy that Plaintiff could perform, the ALJ denied the application.³

5.      Plaintiff appealed the ALJ's decision to the Appeals Council and submitted additional documentary evidence, which is included in the Record.  *See* Record at 451-595.  The Appeals Council considered the additional evidence, but denied Plaintiff's request for review on June 29, 1999.  *See* Record at 5-6.  Therefore, the ALJ's November 22, 1996 decision stands as the final decision adopted by the agency.

6.      The Court's scope of review is limited to whether the ALJ's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards.  *See Hamilton v.*

---

³The parties agree that the ALJ made an error in his decision when he included "medium occupations" in his list of jobs that were available in significant numbers in the national economy at the bottom of page 10 of his decision (Record at 21).  There is no evidence on the record that Plaintiff can perform medium level work.  However, this error is undoubtedly harmless because there are still numerous unskilled sedentary and light jobs available in the national economy.

*Secretary of Health and Human Svcs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)).

7. Plaintiff challenges the ALJ's findings in four areas: first, that the ALJ improperly found that Plaintiff's mental impairment does not significantly affect his ability to perform light work; second, that the ALJ inappropriately relied on the "grids"; third, that the ALJ failed to call upon an vocational expert to support the finding that there is work that Holmes can perform; and fourth, that ALJ failed to consider evidence that Holmes has been found disabled by the State of New Mexico by virtue of the fact that he is a recipient of General Assistance.

8. Neither party challenges the ALJ's findings at Steps 1-4 of the sequential analysis. Therefore, the Court's inquiry is limited to whether there is substantial support for the ALJ's findings at Step 5, and whether the ALJ applied the correct legal standard at that step. At Step 5, the burden shifts to the Commissioner to establish that Holmes can perform work that is available in the national economy. *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988).

9. The ALJ made extensive findings regarding Plaintiff's medical history. *See* Record at 13-20. The ALJ found that Holmes had been treated for low back pain since 1993 and "white coat" hypertension since at least May 1995. *See id.* at 14. Holmes also had a squamous cell carcinoma lesion removed in June 1995. *See id.* The ALJ documented a series of medical records in July and August 1995 with similar findings: hypertension that was not responding well to medication, back pain that was responding to medication, irritability and problems sleeping that

4

responded to amitryptyline.[4] *See id.* The ALJ also reported the results of an examination of Holmes that was conducted by Dr. Peacock in August 1995. Dr. Peacock examined Holmes after he filed his disability application, and the examination appears to have focused exclusively on Holmes' back and leg complaints. *See* Record at 175-77. Dr. Peacock concluded that although Holmes might not be able to perform his job as plasterer because of his back pain, he could perform light tasks. *See id.* at 177. There is no indication that Dr. Peacock was aware of any mental problems that Holmes might have, or considered them in reaching his conclusion.

10. The ALJ's decision goes on to consider the records of three incidents that caused Holmes to be hospitalized for mental illness from December 28, 1995 - January 9, 1996, January 23, 1996 - February 1, 1996, and February 18, 1996 - March 25, 1996. In each incident, Holmes was reported to have had a manic episode, becoming agitated, combative, and violent. *See* Record at 15-17. In each case, Holmes was stabilized with medication. After the first incident, Holmes was placed on valproic acid, ativan, naproxen, hydrochlorothiazide, and lisinopril. Holmes stopped taking his medication due to concern over side effects, which apparently precipitated the second incident. After the second incident, Holmes was placed on trazodone, valproic acid, baclofen, hydrochlorothiazide, lisinopril and antacids. Holmes again stopped taking his medications due to perceived side effects, which led to the third incident. During Holmes' third hospitalization, his diagnosis was changed from bipolar disorder to personality disorder, and his medication was changed to lithium. *See* Record at 17-18. After the February and March 1996 hospitalization, Holmes appears to have remained on his medications without further incidents.

---

[4]The ALJ found that amitryptyline, a tricylcic antidepressant, was prescribed for Holmes' back pain. In fact, the medical records indicate that amitryptyline was prescribed to reduce Holmes' irritability, improve his mood, and help him to sleep better. *See, e.g.,* Record at 167.

5

11. In the supplemental material presented to the Appeals Council, Plaintiff presents evidence that Holmes was found to have a large arterio-venous malformation in the front part of his brain in April 1997. *See* Record at 476, 526. According to Holmes' physician, this malformation could be the cause of the sudden onset of manic depressive episodes. *See id.* at 476. Holmes underwent a thirteen-hour left frontal craniotomy on May 9, 1997 to correct the malformation. *See* Record at 553-56. Although the Appeals Council considered this evidence and included this evidence in the Administrative Record, the Appeals Council determined that it was not relevant to whether Holmes was disabled on or before November 22, 1996. *See* Record at 5-6.

12. The ALJ's conclusion that Holmes could perform the full range of unskilled light work despite his mental problems appears to be based largely on four underlying findings: 1) that Holmes' condition could be controlled by medication and that his condition only becomes disabling when he fails to take his medication, *see* Record at 13, 20; 2) that Dr. Peacock found Holmes to be capable of performing light work and no other physician has placed work restrictions on Holmes, *see* Record at 14-15, 20; 3) that Holmes' mental condition was stable from at least June 1996 through September 26, 1996, *see* Record at 18-19; and 4) that Holmes was capable of performing a number of routine household tasks, *see* Record at 19-20. The ALJ also noted that to the extent Holmes' disability is related to alcohol consumption, he is ineligible for benefits, *see* Record at 19-20.

13. As a preliminary matter, I note that the ALJ did not make an express finding that Holmes' use of alcohol contributed to any alleged disability, and the ALJ did not permit Holmes to develop the record on that point. *See* Record at 62-64. Therefore, despite periodic references

by the ALJ to alcohol use, that issue cannot serve as a basis for the ALJ's decision and must be viewed as a "red herring" for the purposes of this appeal.

14. The ALJ correctly noted that a claimant may be denied benefits if the claimant fails to follow treatment prescribed by a physician that could restore the ability to work, unless the claimant's refusal to follow treatment was for a good reason. *See* 20 C.F.R. §§ 404.1530, 416.930. The ALJ noted considerable evidence on the record that Holmes refused to take certain medications due to perceived adverse side effects. *See* Record at 17, 18. However, the ALJ did not make a finding as to whether Holmes' refusal to take his medication was unreasonable. As noted above, Holmes' physicians changed his course of medication several times, and there is evidence from Holmes' treating physicians that his decision to stop taking valproic acid and/or lithium might be reasonable. *See* Record at 350-51, 353. Furthermore, a claimaint's refusal to follow a course of treatment must be considered in light of the claimant's psychological circumstances; a claimaint who lacks the mental ability to adhere to a treatment program cannot be denied benefits for that reason alone. *See Preston v. Heckler,* 769 F.2d 988, 990 (4th Cir. 1985); *Sharp v. Bowen*, 705 F. Supp. 1111, 1124 (W.D. Pa. 1989). Given the evidence on the record, the ALJ cannot base a denial of disability on noncompliance with prescribed medications without an express finding that Holmes' noncompliance was unreasonable.

15. As to Dr. Peacock's evaluation of Holmes' ability to perform light work, there is no indication that Dr. Peacock considered, or was even aware of, Holmes' mental disorder. The doctor's report focuses exclusively on the back and leg complaints and medical records indicating some minor degenerative spine abnormalities. *See* Record at 175-77. Because Dr. Peacock did not consider Holmes' mental impairment, his report cannot serve as the basis of a conclusion that

7

Holmes can perform the full range of unskilled light work. Similarly, the fact that other physicians did not place Holmes on work restrictions cannot be taken as evidence that Holmes could perform unrestricted work.

16. Defendant argues that Holmes' mental condition was not disabling except for a period of less than four months, from late December 1995 through March 1996. A claimant must establish that he or she suffers from an impairment that is expected either to result in death or last for a continuous period of at least twelve months in order to qualify for disability benefits. *See Thompson*, 987 F.2d at 1486. However, an impairment does not have to be disabling for every day of the twelve month period; the twelve-month requirement only demands that the impairment be expected to last for at least twelve months. *See Walker v. Secretaory of Health & Human Servs.*, 943 F.2d 1257, 1260 (10th Cir. 1991); *Martonik v. Heckler*, 773 F.2d 236, 239 (8th Cir. 1985). Although there is no doubt that Holmes' mental condition was disabling during the four-month period that included his three hospitalizations, there is evidence on the record that Holmes' mental impairment may have existed before December 1995 and after March 1996. For example, the tricyclic antidepressant amitryptyline was prescribed for Holmes' irritability, mood and insomnia as early as July 1995, *see* Record at 167, and there is evidence that Holmes' manic-depressive symptoms may have been related to the arterio-venous malformation that was surgically repaired in May 1997, *see* Record at 476. The ALJ did not make a finding as to whether or not Holmes' mental impairment lasted or was expected to last at least twelve months. Without such a finding by the ALJ, and with at least some evidence on the record from which the ALJ could have concluded that the impairment was expected to last at least twelve months, the decision cannot be affirmed on this basis.

17. The ALJ's finding that Plaintiff occasionally performs a wide variety of household tasks is insufficient, standing alone, to serve as the basis for a conclusion that he can perform the full range of unskilled light work. *See Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988). Defendant is correct that the ALJ is entitled to consider these activities, along with other evidence, in determining disability. However, mental impairments impose non-exertional limitations that may be volatile, with frequent periods of remission followed by relapses. *See Butler v. Department of Health & Human Servs.*, No. 93-6025, slip op. at 8 (10th Cir., Oct. 22, 1993) (unpublished disposition). I conclude that Plaintiff's performance of household tasks is not substantial evidence that he can perform the full range of unskilled light work despite his mental impairment.

18. Plaintiff argues that the ALJ improperly relied on the "grids" to find that Holmes' condition was not disabling despite the presence of non-exertional impairments. In response, the Commissioner argues that Social Security Administration Ruling SSR 83-14 permits the "grids" to be used to support a finding of no disability "[w]here it is clear that the additional [non-exertional] limitation or restriction has very little effect on the exertional occupational base." *See* SSR 83-14 at 6. The difficulty with this argument is that there is no substantial evidence that Holmes' mental impairment has very little effect on the exertional occupational base. As noted *supra* ¶ 4, it is unclear how the ALJ reached his conclusion that Holmes could perform simple, routine repetitive tasks without undue supervision with reasonable regularity despite his mental impairment. Therefore, I propose finding that the ALJ prematurely relied upon the "grids" without first establishing that Plaintiff's non-exertional impairment had very little effect on the occupational base.

19. The ALJ failed to call upon a vocational expert to offer an opinion as to whether Plaintiff could perform a significant number of jobs in the national or regional economies despite his mental impairment. Because there is insufficient evidence on the record that Plaintiff can perform the full range of unskilled light work and there is no evidence by a vocational expert on specific jobs that Plaintiff can perform, I propose finding that there is insufficient support for the ALJ's conclusion at Step 5 that Plaintiff can perform a significant number of other jobs in the national economy.

20. In view of the recommended disposition, I propose finding that it is unnecessary to decide at this time whether the ALJ failed in his duty to consider the alleged finding of disability by the State of New Mexico's general assistance program.

## Recommended Disposition

I recommend that Plaintiff's motion be granted and this case be remanded to the Social Security Administration for further findings. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may file with the Clerk of the District Court written objections to such proposed findings and recommendations. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

Leslie C. Smith
UNITED STATES MAGISTRATE JUDGE

F:\aaSS Orders\99-822 pfd.wpd